IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**Buyerleverage Email Solutions, LLC,** *a Delaware*
*Limited Liability Company,*

Plaintiff;

v.

**SBC Internet Services, Inc., AT&T Services, Inc.,**
**Comcast Cable Communications LLC, Microsoft**
**Corporation, Time Warner Cable, Inc., Yahoo! Inc.**
**and Return Path, Inc.,**

Defendants.

Civil Action No. 11-645-RGA

MEMORANDUM OPINION

Daniel P. Murray, Esq., O'Kelly Ernst & Bielli, LLC, Wilmington, DE; Frederick C. Laney, Esq. (argued), Niro, Haller & Niro, Chicago, IL; Timothy J. Haller, Esq., Niro, Haller & Niro, Chicago, IL; Daniel R. Ferri, Esq., Niro, Haller & Niro, Chicago, IL, attorneys for Plaintiff.

Alisa E. Moen, Esq., Blank Rome LLP, Wilmington, DE; Kenneth L. Bressler, Esq. (argued), Blank Rome LLP, New York, NY; Peter S. Weissman, Esq., Blank Rome LLP, Washington, DC; Kevin R. Doherty, Esq., Blank Rome LLP, New York, NY, attorneys for Defendants SBC Internet Services, et al.

Brian E. Farnan, Esq., Farnan LLP, Wilmington, DE; Chad S. Campbell, Esq., Perkins Coie, Phoenix, AZ, attorneys for Defendant Microsoft Corporation.

Kelly E. Farnan, Esq., Richards, Layton & Finger, Wilmington, DE; Lawrence J. Gotts, Esq., Latham & Watkins LLP, Washington, DC; James R. Bender, Latham & Watkins LLP, Washington, DC, attorneys for Defendants Time Warner Cable, Inc. and Comcast Cable LLC.

October 22, 2013

ANDREWS, U.S. District Judge:

Pending before this Court is the issue of claim construction of various disputed terms

found in U.S. Patent No. 7,072,943, U.S. Patent No. 7,636,756, U.S. Patent No. 7,725,546, and

U.S. Patent No. 7,962,561.

## I. BACKGROUND

On July 21, 2011, Buyerleverage Email Solutions LLC ("Plaintiff") filed a patent

infringement action (D.I. 1) against AT&T, Inc., Cisco Systems, Inc., Comcast Corporation,

Microsoft Corporation, Surewest Communications,[1] Time Warner Cable, Inc., Yahoo! Inc., and

Knology, Inc. On November 9, 2011, Return Path, Inc. filed a motion to intervene in the suit.

(D.I. 27). On December 8, 2011 Buyerleverage amended the complaint to name SBC Internet

Services, Inc. (D.I. 32). The Court has considered the Parties' Joint Claim Construction Brief.

(D.I. 178). The Court held oral argument on the disputed claim terms on September 26, 2013.

(D.I. 182).

The parties have identified about fifteen disputed terms. At least one was resolved by the

parties. (D.I. 182 at 113). The Court now resolves the disputes that appear to be most important.

(D.I. 182 at 122).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to

which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or

catechism for conducting claim construction.' Instead, the court is free to attach the appropriate

---

[1] The Plaintiff stipulated to a dismissal of Surewest Communications on December 16, 2011 (D.I. 38).

weight to appropriate sources 'in light of the statutes and policies that inform patent law.'"

*SoftView LLC v. Apple Inc.*, 2013 WL 4758195 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415

F.3d at 1324). When construing patent claims, a court considers the literal language of the claim,

the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52

F.3d 967, 977-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the

specification is always highly relevant to the claim construction analysis. Usually, it is

dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at

1315 (internal quotations and citations omitted).

Furthermore, "the words of a claim are generally given their ordinary and customary

meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the

art in question at the time of the invention, i.e. as of the effective filing date of the patent

application." *Phillips*, 415 F.3d at 1312-13 (internal citations and quotation marks omitted).

"[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the

entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary

meaning of claim language as understood by a person of skill in the art may be readily apparent

even to lay judges, and claim construction in such cases involves little more than the application

of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations

omitted).

A court may consider extrinsic evidence, which "consists of all evidence external to the

patent and prosecution history, including expert and inventor testimony, dictionaries, and learned

treatises," in order to assist the court in understanding the underlying technology, the meaning of

terms to one skilled in the art and how the invention works. *Id.* at 1317-19 (internal quotation

marks and citations omitted). However, extrinsic evidence is less reliable and less useful in claim

construction than the patent and its prosecution history. *Id.*

Finally, "[a] claim construction is persuasive, not because it follows a certain rule, but

because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa'*

*per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that

would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l*

*Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation

omitted).

## III. CONSTRUCTION OF DISPUTED TERMS

A. *"something of value"*

1. *Plaintiff's proposed construction*: "anything of value."

2. *Defendants' proposed construction*: "money or a money equivalent that can be
   transferred from an email sender to another party and that has sufficient worth to
   provide an economic disincentive."

3. *Court's Construction*: "money or a money equivalent."

The Plaintiff argues that "something of value" should not be limited to "money or

property" because the term can encompass intangibles such as rights or privileges. (D.I. 178 at

15). In support of this it notes that dependent claims refer to "something of value" as "an account

number and an authorization to take from the account." (*see* Claims 26, 34, 38, 40 of '943). The

Plaintiff also relies on the prosecution history for a broad reading of "something of value," as

well as the inventor's deposition testimony. (D.I. 179-1 at 150). Defendants argue that construing

the term so broadly would include tangibles such as shirts, ties, and conference room tables. (D.I.

3

178 at 16). Defendants also assert that the "something of value" must be of sufficient worth to provide an economic disincentive. *Id.*

The fact that the prosecution history and subsequent deposition testimony support Plaintiff's proposed construction is not persuasive. The specification makes no mention of conference room tables or herds of cattle as "something of value." While tangible and living objects indeed have value, they have no place in the internet system of the current invention. The specification repeatedly refers to "something of value" as money or a credit card authorization. (*see* Col. 9 lines 34-40 of '943). Therefore, the Court's construction requires that "something of value" be money or a money equivalent.

Defendants' construction would also require that the something of value is of sufficient worth such that it provides an economic disincentive. While it is true that the goal of the system is for the something of value to provide an economic disincentive, this is not a requirement of the claims. If something has value, no matter how small, then it provides an economic disincentive, albeit a small one.

B. *"benefit arising from the something of value"*

1. *Plaintiff's construction*: "anything that is favorable or advantageous, such as a right or service, that emanates from the something of value."

2. *Defendants' construction*: "a right resulting solely and directly from the something of value."

3. *Court's construction*: "a right or service resulting from the something of value."

The Plaintiff argues that this term be construed as comprising almost anything that is favorable which emanates from the something of value. (D.I. 178 at 37). In support of this the

4

Plaintiff points to the prosecution history as well as the plain and ordinary meaning of the term

"benefit." *Id.* Defendants argue that the prosecution history actually supports their construction

in that the listed examples include "any claim the sender might have had to monies held on his

behalf," "the debiting of the sender's account of the system," or "previously purchased bulk

mailing rights with an ISP." (D.I. 178 at 39). Furthermore, Defendants point out that the

specification describes benefits as "rights to reclaim money or to cancel a money equivalent such

as a credit card or debit card authorization." (Col. 9 lines 34-42 and Col. 10 lines 3-6 of '943).

The Court agrees with Defendants. The specification and the prosecution history support

Defendants' proposed claim construction. However, the term "solely and directly" does not find

support in the intrinsic evidence, and is unclear. Therefore the Court's claim construction does

not incorporate this term. Furthermore, it is not clear to the Court why the "benefit" could not be

a service as well as a right. The delineation between a service and a right is a matter of

description, as "bulk mailing rights" could just as easily be described as "access to a bulk

mailing service." For clarification the Court's construction therefore incorporates the term

"service" as a possible benefit.

C.      *"something of value that has been put at risk of forfeiture," "(something of value)*

*associated with the email," "(sending...) depending at least in part on whether or not (the*

*system has received...)"*

1. *Plaintiff's construction*: plain and ordinary meaning.

2. *Defendants' construction*: all of the terms require a one to one relationship

between the email and the something of value.

3. *Court's construction*: all of the terms require a one to one relationship between

5

the email and the something of value.[2]

The dispute over the above terms, and in general the dispute as a whole, turns on whether the patent is limited to a one to one relationship between the email and the something of value. (*see* D.I. 182 at 26). During oral argument, the Plaintiff argued that the system did not require a pro-rata taking of the something of value for each unwanted email. Plaintiff suggested that, for example, there could be a "threshold" of ten. If there were only nine unwanted emails, there would be no forfeiture. *Id.* Defendants argued that every example in the specification requires a one to one or pro-rata relationship. (D.I. 182 at 19 lines 12-16).

During oral argument Plaintiff's counsel conceded that every single embodiment described in the Summary of Invention involved the recipient getting the deposit or at least having the opportunity to get the deposit if there was one unwanted email. (D.I. 182 at 29 lines 1-10). However, Plaintiff's counsel argued that the prosecution history makes clear that the inventor contemplated a system which was not one to one, and that the specific embodiments were just exemplary and should not be limiting. (D.I. 182 at 27). Plaintiff's argument that the prosecution history supports its claim construction is unpersuasive.

This is not a case where the inventor consistently described his invention as encompassing embodiments that could have a non pro-rata relationship. There is not a single reference in the specification to a system according to the claimed invention other than a one to one or pro-rata system. Furthermore, there is no credible evidence in the prosecution history that the inventor contemplated a non pro-rata or "threshold" system until long after the filing of the patents in suit. The clearest example that the patent contemplated a non-pro-rata relationship is

---

[2] The parties will need to meet and confer and propose how to implement this ruling.

6

an interview summary (D.I. 162-11 at BUY001353) from an interview on March 14, 2011. This statement was made approximately four months before litigation commenced, and as such suffers from the same unreliability as extrinsic evidence, and, in my opinion, can be discounted as litigation inspired. *See ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009) (giving less weight to a claim added years after filing and after the introduction of the allegedly infringing products). Therefore, the Court's claim construction requires a one to one relationship between the email and the something of value. In light of this ruling, the Court sees no need to construe these terms further.

## IV.   CONCLUSION

The Court has not construed all of the disputed terms.[3] At some point, the Court will need the parties to submit a proposed order consistent with this opinion, suitable for submission to the jury, but believes it makes sense to let the parties first try to resolve as much as they can. The Court requests a joint status report on these *Markman* issues no later than twenty-eight days from the date of this Opinion.

---

[3] The Court requests that the parties meet and confer to see whether and to what extent the remaining disputed terms can be agreed upon.